```
 1
 2
 3
 4
 5
 6
 7                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
 8                            AT SEATTLE
 9
10   LEONARDO BANDERA MEGRET,          CASE NO. C17-0385JLR
11              Plaintiff,             ORDER AFFIRMING
          v.                           DEFENDANT'S DECISION TO
12                                     DENY BENEFITS
13   NANCY A. BERRYHILL,
14              Defendant.
```

## I. INTRODUCTION

Plaintiff Leonardo Bandera Megret seeks review of the denial of his application for supplemental security income ("SSI") benefits. Mr. Megret contends that the Administrative Law Judge ("ALJ") erred in evaluating the medical evidence in the record and Mr. Megret's subjective complaints. (Op. Br. (Dkt. # 14) at 1-2.) Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the court AFFIRMS Defendant Commissioner Nancy A. Berryhill's ("the Commissioner") final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

On March 9, 2010, Mr. Megret protectively filed an application for SSI benefits. (Administrative Record ("AR") (Dkt. # 9) at 1031.) Mr. Megret's application was denied initially and on reconsideration. (*Id.*) After a hearing and an unfavorable decision, Mr. Megret appealed to this court. (*Id.*) This court reversed and remanded the matter for further administrative proceedings. (*Id.*) After the ALJ conducted another hearing on September 21, 2016, the ALJ issued a decision finding Mr. Megret not disabled. (*Id.* at 1031-50.)

In her decision, the ALJ utilized the five-step disability evaluation process,[1] and the court summarizes the ALJ's findings as follows:

> **Step one**: Mr. Megret has not engaged in substantial gainful activity since September 16, 2011, the amended alleged onset date of disability.
>
> **Step two**: Mr. Megret has the following severe impairments: post-traumatic stress disorder, major depressive disorder with psychotic features, history of antisocial personality disorder, cognitive disorder, and substance use disorder.
>
> **Step three**: Mr. Megret does not have an impairment or combination of impairments that meets or equals the requirements of a listed impairment.[2]
>
> **RFC**: Mr. Megret has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels except that he is able to understand, remember, and carry out simple, routine tasks, where such tasks are predetermined by the employer. He can have no contact with the general public. He cannot perform tandem tasks or tasks involving a cooperative team effort, but he is able to have occasional superficial contact with coworkers and supervisors. He is able to work in a predictable workplace environment.
>
> **Step four**: Mr. Megret can perform past relevant work as a fish packer.

---

[1] 20 C.F.R. § 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

> **Step five**: Alternatively, Mr. Megret can perform jobs that exist in significant numbers in the national economy. Therefore, he has not been disabled since September 16, 2011, the amended alleged onset date of disability.

(*See id.*) It does not appear from the record that the Appeals Council assumed jurisdiction of the case.[3] *See* 20 C.F.R. § 416.1484.

## III.  ANALYSIS

Pursuant to 42 U.S.C. § 405(g), the court must set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

### A. Evaluation of the Medical Evidence

Mr. Megret argues that the ALJ erred in evaluating the medical evidence in the record. (*See* Op. Br. at 5-15.) Where the medical evidence in the record is not conclusive, resolving questions of credibility and conflicts in the evidence is solely the responsibility of the ALJ. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ may also draw inferences "logically flowing

---
[3] The court omits the rest of the procedural history because it is not relevant to the outcome of the case.

ORDER - 3

from the evidence." *Sample*, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

1. James W. Prince, M.D.

Mr. Megret argues that the ALJ erred by failing to give a specific and legitimate reason supported by substantial evidence to discount the opinion of treating physician James W. Prince, M.D. (*See* Op. Br. at 5-9.) The court disagrees.

In July 2011, Dr. Prince completed a medical source statement and opined that Mr. Megret had marked limitations in all areas of understanding, memory, sustained concentration, and persistence, as well as marked limitations in most areas of adaptation. (*See* AR at 688-90.) Dr. Prince also indicated that Mr. Megret had mild to moderate limitations in social functioning. (*See id.* at 689.) The ALJ gave Dr. Prince's opinion little weight, incorporating moderate social limitations into the RFC but discounting the remaining marked limitations because, among other reasons, the severity of the limitations was inconsistent with "the relatively benign findings documented in [Dr. Prince's] contemporaneous treatment notes." (*See id.* at 1046.)

//

ORDER - 4

An ALJ need not accept a treating physician's opinion if it is inadequately supported by clinical findings. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Moreover, discrepancies between a physician's functional assessment and that physician's clinical notes, recorded observations, and other comments regarding a claimant's capabilities are "a clear and convincing reason for not relying" on the assessment. *See Bayliss*, 427 F.3d at 1216; *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989). Here, Dr. Prince's clinical notes indicated that Mr. Megret was consistently alert, calm, coherent, composed, and showing no obvious signs of psychosis. (*See* AR at 879-80.) Clinical notes from Mr. Megret's other treatment providers also stated that Mr. Megret was alert, responded to questions appropriately, showed no signs of psychosis, and had intact judgment and memory. (*See* AR at 917, 967-68, 1269.) Therefore, substantial evidence supports the ALJ's reason for discounting Dr. Prince's opinion regarding Mr. Megret's cognitive functioning.

2. Catherine Grupp, Ph.D., ARNP

Mr. Megret argues that the ALJ erred by failing to give a specific and legitimate reason supported by substantial evidence to discount the opinion of treatment provider Catherine Grupp, Ph.D., ARNP.[4] (*See* Op. Br. at 5-9.) The court disagrees.

//

---

[4] The Commissioner argues that though Dr. Grupp has a Ph.D., she is not licensed as a psychologist in Washington and therefore is not an acceptable medical source. (*See* Resp. Br. (Dkt. # 18) at 8.) The ALJ, the Commissioner argues, therefore needed only a germane reason supported by substantial evidence to discount Dr. Grupp's opinion. (*See id.*) Because the court finds that the ALJ provided a reason sufficient to satisfy the stricter standard, the court need not decide whether Dr. Grupp was an acceptable medical source.

In October 2012, Dr. Grupp completed a mental status report in which she stated that Mr. Megret could not sustain work activity because he was "not able to remember what he needs to do from day to day and has poor social interactions." (*See* AR at 929.) The ALJ gave Dr. Grupp's opinion little weight because it was inconsistent with contemporaneous treatment notes and because it was based on Mr. Megret's self-reports. (*See id.* at 1046-47.)

As described above, clinical notes stated that Mr. Megret showed largely normal cognitive function and intact memory during treatment. *See supra* § III.A.1. Regarding Mr. Megret's social functioning, the ALJ noted that Dr. Grupp relied on Mr. Megret's self-reports, which were not fully reliable. (*See* AR at 1046-47.) "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (internal citation omitted). Here, Dr. Grupp's description of Mr. Megret's social functioning appeared to be based on Mr. Megret's statements that he has no friends because Dr. Grupp's treatment notes did not include reports of severely impaired social interactions. (*See* AR at 917, 926, 928, 965-68.) The ALJ also noted that Mr. Megret reported elsewhere that he spent time with his roommate, occasionally attended church and community dinners, connected with friends online, spoke with family over the phone, visited with people at the park several times a day, and traveled to Hawaii with friends. (*See id.* at 836-37, 905, 1036, 1228.) Therefore, the ALJ provided a specific and legitimate reason supported by substantial evidence to discount Dr. Grupp's

//

opinion that Mr. Megret's social functioning was so severely impaired that he would be unable to sustain work activity.

The ALJ also noted that Dr. Grupp added her signature in 2013 to Dr. Prince's July 2011 opinion without adding any further support or explanation. (*See id.* at 1045.) Accordingly, the ALJ's reasons for discounting Dr. Prince's opinion are equally sufficient to discount Dr. Grupp's endorsement of that opinion. *See supra* § III.A.1.

### 3. James Czysz, Psy.D., and Joan Davis, M.D.

Mr. Megret argues that the ALJ erred by failing to give a specific and legitimate reason supported by substantial evidence to discount the opinions of examining physicians James Czysz, Psy.D., and Joan Davis, M.D. (*See* Op. Br. at 12-15.) The court disagrees.

Dr. Czysz and Dr. Davis examined Mr. Megret in April 2012. (*See* AR at 885-92.) Dr. Czysz stated that Mr. Megret would be unemployable because he would not be able to interact with coworkers or learn new tasks. (*See id.* at 890.) Dr. Davis found that Mr. Megret would have significant difficulty performing simple and repetitive tasks, maintaining normal workplace attendance, and dealing with usual workplace stressors. (*See id.* at 887-88.) The ALJ gave both of these opinions little weight because, among other reasons, the severity of the limitations was inconsistent with contemporaneous treatment notes. (*See id.* at 1045-46.)

As described above, substantial evidence supports the ALJ's finding that such extreme limitations were inconsistent with the clinical notes of Dr. Prince and other treatment providers. *See supra* §§ III.A.1., 2. The ALJ noted that neither physician

ORDER - 7

reviewed those clinical notes and was aware of Mr. Megret's presentation during treatment appointments. (*See* AR at 1045.) The ALJ also noted that another physician who reviewed the record specifically mentioned the significant gap in presentation between treatment, where Mr. Megret appeared fully oriented with normal mood and affect, and evaluations for benefits, where he "present[ed] as disheveled, confused, and report[ed] hearing voices." (*See id.* at 905.) Therefore, substantial evidence supports the ALJ's reason for discounting the opinions of Dr. Czysz and Dr. Davis.

    4. <u>Phyllis Sanchez, Ph.D.</u>

Mr. Megret argues that the ALJ erred by failing to fully account for the opinion of examining psychologist Phyllis Sanchez, Ph.D. (*See* Op. Br. at 9-11.) The court disagrees.

Dr. Sanchez examined Mr. Megret in April 2014 and opined that he had no greater than moderate limitations in his ability to perform basic work activities based on his mental impairments. (*See* AR at 1170.) The ALJ gave Dr. Sanchez's opinion significant weight because it was consistent with the overall evidence and objective testing, so the ALJ accounted for the moderate limitations in the RFC. (*See id.* at 1043-44.) The ALJ gave limited weight to Dr. Sanchez's Global Assessment of Functioning ("GAF") score of 50 because it was internally inconsistent with Dr. Sanchez's specific functional assessment.

Mr. Megret argues that the ALJ improperly discounted the GAF score. (*See* Op. Br. at 9.) "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v.*

*Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). A GAF score "standing alone" does "not control determinations of whether a [claimant's] mental impairments rise to the level of a disability," but it is "relevant evidence" of the claimant's ability to function and therefore "may be a useful measurement." *Garrison v. Colvin*, 759 F.3d 995, 1002 n. 4 (9th Cir. 2014). Here, Dr. Sanchez recorded a GAF score of 50, generally indicating serious symptoms or impairments in social, occupational, or school functioning, but went on to provide a specific workplace functional assessment. (*See* AR at 1169-70.) Mr. Megret argues that the ALJ should have disregarded the specific moderate limitations assessed and incorporated more severe limitations into the RFC based on the GAF score. (*See* Op. Br. at 11.) However, for an ALJ to impose stricter limitations than those specifically assessed by a physician based on the "rough estimate" of a GAF score would be an improper substitution of the ALJ's lay opinion. *See McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2nd Cir. 1983) (finding that an ALJ cannot arbitrarily substitute own judgment for competent medical opinion). Therefore, the ALJ did not err in her analysis of Dr. Sanchez's opinion.

5. Kenneth N. Asher, Ph.D.

Mr. Megret argues that the ALJ erred by failing to give a specific and legitimate reason supported by substantial evidence to discount the opinion of testifying medical expert Kenneth N. Asher, Ph.D. (*See* Op. Br. at 11-12.) The court disagrees.

Dr. Asher opined at the hearing upon review of the medical record that Mr. Megret had several cognitive and social mental limitations. (*See* AR at 1317-46.) The ALJ gave significant weight to Dr. Asher's opinion and incorporated it nearly in full into the RFC.

ORDER - 9

(*See id.* at 1043-44.) However, the ALJ did not adopt Dr. Asher's opinion that Mr. Megret would struggle to persist in completing simple tasks because it was inconsistent with the opinion of Dr. Sanchez, who conducted an objective examination. (*See id.* at 1044.)

A nonexamining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Lester*, 81 F.3d at 830-31. However, an examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Id.* Here, Dr. Sanchez performed a mental status examination and found that Mr. Megret was not significantly impaired in his ability to complete simple tasks. (*See* AR at 1168-74.) Therefore, substantial evidence supports the ALJ discounting Dr. Asher's opinion because it was inconsistent with Dr. Sanchez's findings.

**B.     Evaluation of Mr. Megret's Subjective Complaints**

Mr. Megret argues that the ALJ erred in evaluating his subjective complaints. (*See* Op. Br. at 15.) However, Mr. Megret does not specifically argue against any of the reasons the ALJ provided for discounting his complaints. (*See id.*) Therefore, Mr. Megret has waived any such argument. *See Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (finding that matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered). Instead, Mr. Megret argues that "his subjective symptoms should best be assessed by the physicians that saw him, not by his own account, which varied." (Op. Br. at 15.) As described above, the ALJ provided sufficient

//

reasons to discount the opinions of any physicians who described symptoms or limitations greater than those assessed in the RFC. *See supra* § III.A.

## IV. CONCLUSION

For the foregoing reasons, the court AFFIRMS the Commissioner's final decision and DISMISSES this case with prejudice.

Dated this 19th day of October, 2017.

JAMES L. ROBART
United States District Judge